MOISE, Justice.
Mrs. Elise Michel, widow of Adolph Dumser, brings this action against Henry Efferson and his bonding company seeking to recover $4,042, with interest, for alleged defective construction work under a certain, building contract for the construction of a duplex at the price and cost of $28,200. Plaintiff’s suit was filed on December 30, 1949.
A prior suit was filed by the contractor against plaintiff on May 10, 1949. The suit was for extra work performed by the contractor on the construction of the duplex. To this suit, Mrs. Dumser filed a reconventional demand, alleging defective construction work which amount to the sum of $2,613. The result of this suit was the payment of the extras, and the reconventional demand of Mrs. Dumser was dismissed, with reservation. After the dis- • missal of her reconventional demand, plaintiff filed this suit for $4,042, almost, double the amount of the original demand in re-convention. On a trial of the merits, the suit for a larger amount was dismissed, and, because of that dismissal, plaintiff prosecutes this appeal.
Defendants admitted the contract, but alleged that in the month of December, 1948, Efferson, Mrs. Dumser, her son, Mr. Charles Babington, Mr. Preston J. Perry and Mr. James J. Lynch, partners of the Continental Casualty Company, and Mr. Charles Hoffman, head of the Bond Department of the firm of Emory & Kaufman, representing Continental Casualty Company, met at the office of Continental Casualty Company, when the building had been completed and when, under the contract, the last two payments of $8,820 were due to Efferson. At this meeting, plaintiff made certain complaints which defendant Efferson agreed to remedy. She complained about the plaster, and he refused to repair it. Mrs. Dumser agreed to accept the plaster as it was. She accepted the keys to the duplex moved into the property and made the final payments through her son. She rented the upper apartment. Defendant Efferson thereafter made the repairs he had agreed to make.
The plaintiff urges that the defendant Efferson refused to give her the keys to the duplex, unless she accepted it in its present condition. It is stated, in the testimony, that when the contractor refused to turn the keys over to the plaintiff at the aforesaid meeting, she stated she had to move *141 into the house, and that under the circumstances, she felt forced to accept the premises in the condition in which they were at that'time.
Defendants’ witnesses swore that Mrs. Dumser took possession of the premises in December, 1948, before Christmas. She filed her suit on December 30, 1949. Defendants contend that more than a year had elapsed.
The guarantee clause of the contract reads:
- “Unless otherwise called for all material and workmanship shall be guar- - anteed for a period of one year, starting from the date of acceptance of the contract. Should any material or workmanship called for by these specifications be of such a nature as to render this guarantee impossible, notice of this effect must be served in writing upon the architect previous to the signing of any contract. Failure to do this will be construed as tacit agreement to the terms of this contract.”
An interpretation of the guarantee clause is not necessary to a decision of this case.
Plaintiff contends that she could not waive a right which was not within her knowledge. This is a correct statement of law, but, the law must be applied to the facts. The facts in the record before us are conclusive that the defects were not only known but discussed at iength by all parties at interest and, particularly, .that Mrs. Dumser knew the condition of the plaster. It is true that Mrs. Dumser did not see the plaster in the upper apartment because she did not go upstairs. But, whose fault was that? When she accepted the building she did not accept only the lower floor. When the balance due under the contract was paid by her, through her son, it was for the entire building contract. No advantage was taken of this lady. She was aided and advised at all times by her son, a capable business man, who drew the checks and made the payments, so, the argument that the waiver must be only for the intentional relinquishment of a known right, is a brutum fulmén. This knowledge is brought home, because at the time of the discussion of acceptance, Mrs. Dumser is quoted as having said that “she would swallow the plaster”. The able counsel argues that the owner of the land has a right to take possession of the structure, without a waiving of her unknown right. Levy v. M. Schwartz & Bro. and Wm. Goldring, 34 La.Ann. 209; Payne & Joubert v. Amos Kent Brick & Lumber Co., 110 La. 750, 34 So. 763 and Borrosky v. Hill, Harris & Co., Inc., 1 La.App. 431. That position of law is well taken, but not in this suit, because the law must be applied to the instant facts.
The record shows that the representatives of the bonding company and the contractor were present when Mrs. Dumser- and her son agreed t.o accept the duplex and waived her claim — taking the property as; *143 is, with the exception of certain repairs, which the contractor agreed to make and did make. The facts further show that Mr. Hoffman, the representative of the Bonding Company, explained that he was representing the company and was protecting and looking after its interest. If the defects were as numerous as claimed, necessitating the filing of a suit, he would have deterred Mrs. Dumser from paying the balance, which was an amount far in excess of plaintiff’s claim for alleged defective work.
In De Lambre v. Williams, 36 La.Ann. 330, our court said:
“The record shows to our entire satisfaction that all the charges which were made in the work, all defects in the job had been fully considered by plaintiff, and satisfactorily accounted for and explained in his mind, and that he had knowingly and unequivocally accepted the work and had settled for the same advisedly, and without any concealment on the part of the defendant. Hence his lips must be sealed from the utterance of any complaint.” See also: Delaney v. Morter, 11 La. App. 310, 123 So. 517; Stabler v. Keaty, La.App., 42 So.2d 909; Lorino v. Charles Rowe Co., La.App., 48 So.2d 103; 17 C.J.S., Contracts, § 514.
It is true, the evidence is conflicting, but we must examine the recorded statements of the witnesses in the light of human experience. We must look at the influences that surround our fellows and then sound their hearts by the plummets we apply to our own, and, when we have hea'rd all and have gone through with the anatomy of the heart, we who feel the influences of all motives that prompt action and all passions that stir the breast, know how to judge our fellowmen. The judge of the district court is in a better position to conclude on the evidence than we ourselves. Because he has seen and heard the witnesses, his conclusions on the facts should not be disturbed unless his findings prove to be manifestly erroneous. Diez v. Diez, 219 La. 576, 53 So.2d 677 and cases therein cited; Moser v. Moser, 220 La. 295, 56 So.2d 553.
For the reasons assigned, the judgment of the district court is affirmed, plaintiff-appellant to pay all costs.