422 So.2d 204 (1982)
NATIONAL ROOFING AND SIDING COMPANY, INC.
v.
GULF COAST OIL COMPANY OF MISSISSIPPI, INC.
No. 13220.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
*205 Stephen R. Doody, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for plaintiff-appellant.
Vincent Paciera, Jr., Lemle, Kelleher, Kohlmeyer, & Matthews, New Orleans, for defendant-appellee.
Before REDMANN, C.J., and GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
This is a claim by plaintiff, National Roofing & Siding Co., Inc. (National) for the balance due on a roofing contract with defendant, Gulf Coast Oil Company of Mississippi, Inc. (Gulf Coast). Gulf Coast answered denying that National performed its contract in a workmanlike manner and reconvened for damages allegedly sustained because of coal tar spillage by National during the course of its work. The trial court awarded National on its principal demand $1,861.80 and Gulf Coast on its reconventional demand $1,550.00. National has appealed. At issue are Gulf Coast's entitlement to damages under the facts presented, National's entitlement to attorney fees under the contract, and National's entitlement to the actual balance on its contract even though this figure exceeds the amount it prayed for in its petition by $100.00.
The contract entered into on December 2, 1976, was for a roofing job on a shopping center owned by Gulf Coast. The work was performed in May, 1977, and the entire contract price of $41,198.00 was paid except for $1,961.80 which was retained by Gulf Coast to compensate it for damages resulting from spillage of coal tar on the parking lot of the center by National while its work was in progress. There is no dispute that the spillage occurred and in August, September and October, 1977, National attempted to remove the tar from the surface of the parking lot at an expense to itself of approximately $900.00. Despite these efforts there are spots and blotches of tar over an area of about four or five car parking spaces in the lot. According to National these spots were simply marks of discoloration left after the tar above the surface had been removed, but Gulf Coast offered some evidence that some of the spots were raised above the ground level and still got sticky when the temperature rose. Gulf Coast called a roofing contractor *206 who testified that the tar spots could be removed at a cost of $1,751.50.
National contends that Gulf Coast suffered no damage because the parking lot contained numerous oil and grease stains and was discolored and worn so that the addition of the tar spots made no difference. It analogizes the problem to a painter's drop cloth already used for several years and having numerous spots on its surface when someone spills additional paint on the drop cloth. National contends that the owner of the cloth would not be entitled to the cost of removing the new spots.
However, this analogy is not appropriate to this case. Gulf Coast's president testified as to efforts expended in maintaining the parking lot and he felt that the parking lot's appearance was diminished by the discoloration. Again, there was some evidence that some of the spots went beyond mere discoloration and were raised above the surface of the ground. While National did expend some efforts to clean the lot three to five months after the spillage occurred, including the use of pressure pumps on the surface, Gulf Coast's roofer's plan was more extensive in that he would take a week using three men on the project and utilizing acid to clean the surface. Undoubtedly, the trial court took these factors into consideration in concluding that the discoloration was more significant and consequential than the analogized paint spills on the painter's used drop cloth.
The ultimate question is whether the trial judge abused his great discretion to award damages under LSA C.C. Art. 1934(3) and the cases interpreting this article such as Sun Finance Co., Inc. v. Briscoe, 384 So.2d 555 (La.App. 4th Cir.1980). Also pertinent are the principles that where there is a legal right to recovery but damages cannot be exactly estimated the trial court has reasonable discretion to assess such damages based on the facts and circumstances of the case, Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971), and if damages cannot be precisely and mathematically determined the trial judge is vested with reasonable discretion in making awards for damage. Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir.1973) writs refused, 290 So.2d 899 and 290 So.2d 901. See also Sahuque Realty Company v. Employers Com'l. U. Ins. Co. of Am., 327 So.2d 563 (La.App. 4th Cir.1976). In the application of these principles we cannot say that the trial judge abused his discretion in allowing Gulf Coast damages of $1,550.00.
The next question is whether National is entitled to attorney fees based on the contractual provisions of 25% attorney fees should it become necessary to place the contract in the hands of an attorney for collection. Under the circumstances of this case, where Gulf Coast withheld $1,961.80 out of the contract price of $41,198.00 and successfully proved its entitlement to an offset of $1,550.00 because of National's breach of contract, National is not entitled to the attorney fees on the difference, because the amount of the offset was commensurate with that due on the contract. Furthermore, the principal reason National incurred attorney fees in the case was not for collection of the balance on the contract but rather for defense against Gulf Coast's successful reconventional demand. As in U-Finish Homes, Inc. v. Lanzl, 202 So.2d 339 (La.App. 1st Cir.1967) National is not entitled to attorney fees.
Finally, National's complaint that the trial court erred in awarding only $1,861.80 as pleaded in its petition rather than $1,961.80 which was the balance due on the contract is well founded. This was an obvious clerical error in the preparation of the petition and the trial court should have granted the relief to which National was entitled irrespective of the amount claimed in the petition. C.C.P. Art. 862. Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir.1979).
Accordingly, the judgment appealed from is affirmed but is amended only to the extent that there is judgment on the principal demand in favor of plaintiff, National Roofing & Siding Company, Inc., and *207 against defendant, Gulf Coast Oil Company of Mississippi, Inc. in the amount of $1,961.80.
AFFIRMED AND AMENDED.